# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ELIZABETH MORA MARTINEZ, | |
| Plaintiff, | CIVIL ACTION NO. 3:20-cv-01550 |
| v. | (SAPORITO, M.J.) |
| KILOLO KIJAKAZI,[1] Acting Commissioner of Social Security, | |
| Defendant. | |

## MEMORANDUM

In this matter, the plaintiff, Elizabeth Mora Martinez, seeks judicial review of the final decision of the Commissioner of Social Security denying her claims for disability insurance benefits and supplemental security income, pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3). The matter has been referred to the undersigned United States magistrate judge on consent of the parties, pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. She has been automatically substituted in place of the original defendant, Andrew Saul. *See* Fed. R. Civ. P. 25(d); *see also* 42 U.S.C. § 405(g) (action survives regardless of any change in the person occupying the office of Commissioner of Social Security). The caption in this case is amended to reflect this change.

## I.   BACKGROUND

On July 19, 2017, Martinez protectively filed applications for disability insurance benefits and supplemental security income, both asserting a disability onset date of May 31, 2017. Her claim was initially denied by state agency reviewers on October 17, 2017. The plaintiff then requested an administrative hearing.

A hearing was held on July 23, 2019, before an administrative law judge, Theodore Burock (the "ALJ"). In addition to the plaintiff herself, the ALJ received testimony from an impartial vocational expert, Brian Bierley. The plaintiff was represented by counsel at the hearing.

On April 25, 2019, the ALJ denied Martinez's application for benefits in a written decision. The ALJ followed the familiar five-step sequential evaluation process in determining that Martinez was not disabled under the Social Security Act. *See generally Myers v. Berryhill*, 373 F. Supp. 3d 528, 534 (M.D. Pa. 2019) (describing the five-step sequential evaluation process). At step one, the ALJ found that Martinez had not engaged in substantial gainful activity since her alleged onset date. At step two, the ALJ found that Martinez had the severe impairments of: obesity; diabetes; sleep apnea; a history of

cerebrovascular accidents; and headaches. At step three, the ALJ found that Martinez did not have an impairment or combination of impairments that meets or medically equals the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.

Between steps three and four of the sequential-evaluation process, the ALJ assessed Martinez's residual functional capacity ("RFC"). *See generally Myers*, 373 F. Supp. 3d at 534 n.4 (defining RFC). After evaluating the relevant evidence of record, the ALJ found that Martinez had the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b),[2] with the following limitations:

> [S]he should not work around ladders, ropes, or scaffolds, unprotected heights, or dangerous machinery. She is limited to routine repetitive tasks.

(Tr. 28.)

In making these factual findings regarding Martinez's RFC, the ALJ considered her symptoms and the extent to which they could reasonably be accepted as consistent with the objective medical evidence

---

[2] The Social Security regulations define "light work" as a job that "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighting up to 10 pounds." 20 C.F.R. § 404.1567(b); *id*. § 416.967(b).

and other evidence of record. *See generally* 20 C.F.R. §§ 404.1529, 416.929; Soc. Sec. Ruling 16-3p, 2017 WL 5180304 (revised Oct. 25, 2017). The ALJ also considered and articulated how persuasive he found the medical opinions and prior administrative medical findings of record. *See generally* 20 C.F.R. §§ 404.1520c, 416.920c.

At step four, based on this RFC and on testimony by the vocational expert, the ALJ concluded that Martinez was unable to perform her past relevant work as actually and generally performed.

At step five, the ALJ concluded that Martinez was capable of performing other work that exists in significant numbers in the national economy. Based on her age, education, work experience, and RFC, and based on testimony by the vocational expert, the ALJ concluded that Martinez was capable of performing the requirements of representative occupations such as small products assembler (DOT # 739.687-010), electrical assembler (DOT # 729.687-010), and parts assembler (DOT # 706.687-022). Based on this finding, the ALJ concluded that Martinez was not disabled for Social Security purposes.

The plaintiff sought further administrative review of her claims by the Appeals Council, but her request was denied on June 24, 2020,

making the ALJ's April 2019 decision the final decision of the Commissioner subject to judicial review by this court.

The plaintiff timely filed her complaint in this court on August 28, 2020. The Commissioner has filed an answer to the complaint, together with a certified copy of the administrative record. Both parties have filed their briefs, and this matter is now ripe for decision.

## II. DISCUSSION

Under the Social Security Act, the question before this court is not whether the claimant is disabled, but whether the Commissioner's finding that he or she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See generally* 42 U.S.C. § 405(g)(sentence five); *id.* § 1383(c)(3); *Myers*, 373 F. Supp. 3d at 533 (describing standard of judicial review for social security disability insurance benefits and supplemental security income administrative decisions).

Martinez asserts on appeal that the ALJ's decision is not supported by substantial evidence because: (1) the ALJ failed to consider all of the relevant evidence, including evidence submitted to the Appeals Council *after* the ALJ's written decision was issued; (2) the ALJ failed to consider

her mental impairments in evaluating her residual functional capacity; (3) the ALJ failed to properly evaluate prior administrative findings, including the medical opinions of a non-examining state agency medical consultant; and (4) the ALJ failed to properly evaluate the medical opinion of the plaintiff's treating medical provider, a physician assistant.[3]

## A. New Evidence Submitted to the Appeals Council

In this appeal, the plaintiff seeks reversal and remand of an adverse disability benefits decision under sentence four of § 405(g), which provides that "[t]he court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g) (sentence four). In reviewing such a decision under sentence four, the

---

[3] The plaintiff's brief articulated three conclusory, extremely general claims of error: (1) the ALJ's RFC determination failed to include all limitations caused by her severe impairments; (2) the ALJ's RFC determination failed to include all limitations cause by impairments the ALJ found to be non-severe, or never mentioned; and (3) the ALJ's RFC determination was defective because the ALJ failed to afford appropriate weight to medical opinions on which it was based. Although not clearly articulated by plaintiff's counsel, a close reading of the plaintiff's brief reveals that these very generalized grievances rest on the specific errors we have articulated above.

statute provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." *Id.* (sentence five).

The plaintiff's brief relies extensively on more than 300 pages of medical records that were submitted to the Appeals Council for consideration on review of the ALJ's written decision. (Tr. 40–414.)[4] But it is well-established that "evidence that was not before the ALJ cannot be used to argue that the ALJ's decision was not supported by substantial evidence." *Matthews v. Apfel*, 239 F.3d 589, 594 (3d Cir. 2001) (citing *Jones v. Sullivan*, 954 F.2d 125, 128 (3d Cir. 1991)); *Orndorff v. Colvin*, 215 F. Supp. 3d 391, 406 (M.D. Pa. 2016) ("When the Appeals Council denies review, evidence that was not before the ALJ may only be used to determine whether it provides a basis for remand under sentence six of section 405(g).") (citation omitted); *see also United States v. Carlo Bianchi & Co.*, 373 U.S. 709, 715 (1963) ("[A] decision may be supported by substantial evidence even though it could be refuted by other evidence that was not presented to the decision-making body.").

---

[4] We note that this additional medical evidence proffered for review by the Appeals Council included numerous transmittal pages, citations to which we have omitted from our discussion below.

This evidence was presented to the Appeals Council *after* the ALJ issued his written decision. The Appeals Council declined to review the ALJ's determination that Martinez was not disabled. We have no authority to review that decision by the Appeals Council. *Matthews*, 239 F.3d at 594 ("No statutory authority (the source of the district court's review) authorizes the court to review the Appeals Council decision to deny review.").

This evidence is nevertheless made part of the administrative record to facilitate potential review under sentence six of § 405(g), which provides:

> The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .

42 U.S.C. § 405(g) (sentence six). Thus, "when the claimant seeks to rely on evidence that was not before the ALJ, the district court may remand to the Commissioner but only if the evidence is new and material and if there was good cause why it was not previously presented to the ALJ (Sentence Six review)." *Matthews*, 239 F.3d at 593; *see also id.* at 594 ("The new and material evidence is transmitted with the record so that

- 8 -

the district court will have before it the evidence that will be the subject of the remand if the claimant can show good cause why such new and material evidence was not submitted to the ALJ."); *Orndorff*, 215 F. Supp. 3d at 406 ("Sentence Six requires a remand when evidence is 'new' and 'material,' if the claimant has demonstrated 'good cause' for not having incorporated the evidence into the administrative record.").

Here, the plaintiff has not moved for or otherwise requested a sentence six remand. But even if she had, remand under sentence six would be unwarranted. To merit a sentence six remand,

> the evidence must first be "new" and not merely cumulative of what is already in the record. Second, the evidence must be "material;" it must be relevant and probative. Beyond that, the materiality standard requires that there be a reasonable probability that the new evidence would have changed the outcome of the [Commissioner's] determination. An implicit materiality requirement is that the new evidence related to the time period for which benefits were denied, and that it not concern evidence of a later-acquired disability or of the subsequent deterioration of the previously non-disabling condition. Finally[,] the claimant must demonstrate good cause for not having incorporated the new evidence into the administrative record.

*Szubak v. Sec'y of Health & Hum. Servs.*, 745 F.2d 831, 833 (3d Cir. 1984) (per curiam) (citations omitted). In this case, the plaintiff has utterly

"failed to allege or establish that this evidence was new, material, and omitted for good cause." *Orndorff*, 215 F. Supp. 3d at 406.

Moreover, based on our own review of the evidence at issue, much of it is clearly immaterial because it relates to Martinez's condition *after* the ALJ rendered his decision, rather than the time period for which benefits were denied. (Tr. 45–152, 161–71, 177–241, 277–340.) *See Appau v. Comm'r Soc. Sec.*, 847 Fed. App'x 149, 152 (3d Cir. 2021) (per curiam); *Orndorff*, 215 F. Supp. 3d at 406; *see also Szubak*, 745 F.2d at 833. Much of it is not "new" because it is cumulative or duplicative of evidence already in the record. (Tr. 153–60, 251–52, 265–69, 276, 343–44, 383–414.) *See Szubak*, 745 F.2d at 833.

Upon examination, the remainder of this evidence does not present "a reasonable possibility that the new evidence would have changed the outcome of the [Commissioner's] determination." (Tr. 241–50, 253–65, 341–42, 345–382.) *See Szubak*, 745 F.2d at 833; *Orndorff*, 215 F. Supp. 3d at 406. The only portion of this remaining new evidence that was highlighted by the plaintiff in her brief is a set of treatment notes reflecting three office visits with her treating nurse practitioner, Michelle

R. Braucher, in February and March 2019.[5] The plaintiff cites them in support of her claim that the ALJ failed to properly consider her depression in determining her RFC. (*See* Doc. 19, at 18 (citing Tr. 245–56).) On February 6, 2019, Braucher observed that Martinez exhibited a depressed mood, though her speech, behavior, judgment, thought content, cognition, and memory were all normal. Braucher noted that Martinez scored a "17" on a depression screening test, the PHQ-9, indicating moderately severe depression. Braucher prescribed sertraline (Zoloft), 50 mg daily. (Tr. 253–56.) One month later, on March 6, 2019, Martinez presented for a follow-up visit, at which Braucher observed that she exhibited a depressed mood with delayed speech, though her behavior, judgment, thought content, cognition, and memory were all normal. Braucher noted that Martinez now scored a "12" on the PHQ-9, indicating mild depression. Braucher further noted that Martinez had been treating with sertraline for a month now, and she was attempting to get into counseling. (Tr. 245–47.) Although courts have recognized that

---

[5] We discuss only two of the visits below. The third, intervening office visit concerned Martinez's physical maladies only, and the treatment notes make no mention whatsoever of her mood or any mental health conditions or treatment. (*See* Tr. 248–50.)

"[n]ew evidence of a continuing psychiatric condition . . . is material if it suggests that the condition may be severe and chronic," *Rawls v. Apfel*, 998 F. Supp. 70, 77 (D. Mass. 1998), the new evidence proffered here is indicative of a brief and isolated period of severe depression, which was quickly ameliorated with treatment, rather than a "severe and chronic" psychiatric condition. The rest of the new evidence is largely unremarkable; indeed, it went entirely unremarked upon by the plaintiff in her brief.[6]

Finally, the plaintiff has failed to articulate any good cause for her failure to present this new evidence to the ALJ before his decision, and there is none evident on the face of the evidence or any of the plaintiff's other submissions, either to the agency or to this court.

Accordingly, Martinez has failed to satisfy the statutory

---

[6] We note that, in support of this same point—that the ALJ failed to properly consider mental functional limitations in formulating Martinez's RFC—the plaintiff cites other items from this new evidence, but all other medical records cited concern her condition *after* the date of the ALJ's decision. (*See* Doc. 19, at 18 (citing Tr. 88–92, 207, 205).) Likewise, in arguing that the ALJ failed to properly consider additional physical functional limitations in formulating her RFC, the plaintiff cites items from this new evidence, but only ones concerning her condition *after* the date of the ALJ's decision. (*See id.* at 14 (citing Tr. 45–58, 74–91, 6, 103, 109–29, 154, 184, 214, 228–32, 313–14).) This other evidence is, of course, immaterial. *See supra.*

requirements for a sentence six remand, and the court is precluded from further considering the additional evidence submitted to the Appeals Council by Martinez after the ALJ's written decision had been issued on April 25, 2019.

### B. Medically Determinable Mental Impairment

At step two, the ALJ found that Martinez had several severe physical impairments, including obesity, diabetes, sleep apnea, a history of cerebrovascular accidents, and headaches. The ALJ also considered physical impairments of high cholesterol and hypertension, which he found to be non-severe. The ALJ did not consider any mental impairments.

The plaintiff argues that the ALJ's step two determination was not supported by substantial evidence because he failed to consider whether she had a severe mental impairment of depression. In response, the Commissioner argues that there was no evidence in the record before the ALJ of a medically determinable impairment of depression, Martinez never mentioned depression at her hearing before the ALJ, and depression was not listed among the conditions for which she sought disability benefits.

A "medically determinable impairment" is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). Because it was never brought to his attention, the ALJ did not make any determination as to whether the medical evidence of record documented any formal diagnosis or clinical findings with respect to depression, and we are unable to find any either in our review of the administrative record.

The only mention of depression in the medical records before the ALJ were treatment notes reflecting Martinez's *subjective* reports of temporarily feeling "depressed" at times.[7] For example, Martinez presented to her treating nurse practitioner, Michelle R. Braucher, on November 2, 2017, for a follow-up on other, chronic medical problems. In the course of that visit, Martinez reported that she was "having some depression," she was "staying up in her bedroom not coming down for

---

[7] The only evidence cited by the plaintiff in support of this claim of error is evidence presented to the Appeals Council that was never presented to the ALJ, most of which concerned Martinez's condition *after* issuance of the ALJ's April 25, 2019, written decision denying her application for disability benefits. As noted above, we are not permitted to consider any of this evidence in this sentence four appeal.

dinner or lunch," and she "only wants to eat pizza." (Tr. 1347.) A month later, on December 7, 2017, she presented to Braucher again for a follow-up on her diabetes. At that visit, Martinez reported that "she is getting out of her room more and started cooking food," that "she thinks that she was depressed over [an] upcoming court custody hearing [concerning] her daughter," and that "now that [it] is over and she got 50% custody of her daughter[,] she feels that she is going to take better care of herself." (Tr. 1341–42.)

A plaintiff's own statements "of symptoms, a diagnosis, or a medical opinion" may not be used to establish the existence of a medically determinable impairment. 20 C.F.R. §§ 404.1521, 416.921; *see also Delgado v. Comm'r of Soc. Sec.*, Civ. No. 20-283, 2021 WL 1686704, at *5 (D.N.J. Apr. 29, 2021). Thus, in the absence of any objective medical evidence of depression, we find there is substantial evidence to support the ALJ's implicit finding that Martinez's alleged depression was not a medically determinable impairment. *See Scipio v. Comm'r of Soc. Sec.*, 611 Fed. App'x 99, 101–02 (3d Cir. 2015) (per curiam). Because the ALJ is only required to consider medically determinable impairments of which he is aware, *see* 20 C.F.R. §§ 404.1521, 404.1545(a)(2), 416.921,

416.945(a)(2), the ALJ's failure to consider the plaintiff's alleged mental impairment of depression in later determining her RFC was not in error. *See Switzer v. Comm'r of Soc. Sec.*, No. 1:18-cv-16554-NLH, 2019 WL 5485526, at *6 (D.N.J. Oct. 24, 2019) (finding that, in determining a claimant's RFC, "the ALJ does not need to consider any alleged conditions that are not medically determinable").

## C. Medical Opinions and Prior Administrative Findings

The plaintiff contends that the ALJ's decision is not supported by substantial evidence because the ALJ erred in his evaluation of conflicting medical opinions and prior administrative findings presented in the administrative proceedings below. As a preface, we note the well-established principle that, in evaluating the medical opinion evidence of record, an "ALJ is not only entitled, but required to choose between" conflicting medical opinions. *Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981). "[T]he possibility of drawing two inconsistent conclusions from the evidence does not prevent [an ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966). Moreover, "[i]n the process of reviewing the record for substantial evidence, we may not 'weigh the evidence or substitute [our

own] conclusions for those of the fact-finder.'" *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005) (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)). Ultimately, to reverse the ALJ's findings and decision, "we must find that the evidence not only *supports* [a contrary] conclusion, but *compels* it." *Immigration & Naturalization Serv. v. Elias-Zacarias*, 502 U.S. 478, 481 n.1 (1992); *see also Smith v. Chater*, 99 F.3d 780, 782 & N.3 (6th Cir. 1996) (citing *Elias-Zacarias* in the context of social security disability benefits); *Hert v. Barnhart*, 234 F. Supp. 2d 832, 837 (N.D. Ill. 2002) ("The court may reverse the Commissioner's decision only if the evidence 'compels' reversal, not merely because the evidence supports a contrary decision.") (citing *Elias-Zacarias*).

Here, the plaintiff originally filed her administrative claim for benefits in July 2017. Thus, a relatively new regulatory framework governing the evaluation of medical opinion evidence applies to this case.[8]

---

[8] We note that counsel for the plaintiff has mistakenly premised his entire argument on this point—that her treating physician assistant's opinion was entitled to controlling weight, or at least great weight—on the old regulations, which no longer apply. This is not the only case in which this same attorney has made this same, fundamental error. *See, e.g.*, Pl.'s Br., *Rivera v. Kijakazi*, Case No. 3:21-cv-01574 (M.D. Pa. filed
*(continued on next page)*

"The new regulations have been described as a 'paradigm shift' in the way medical opinions are evaluated." *Knittle v. Kijakazi*, Civil No. 1:20-CV-00945, 2021 WL 5918706, at *4 (M.D. Pa. Dec. 15, 2021). "Prior to March 2017, ALJs were required to follow regulations which defined medical opinions narrowly and created a hierarchy of medical source opinions with treating sources at the apex of this hierarchy." *Densberger v. Saul*, Civil No. 1:20-CV-772, 2021 WL 1172982, at *7 (M.D. Pa. Mar. 29, 2021). Under this prior regulatory scheme, the Social Security Administration "followed the 'treating physician rule,' which required the agency to give controlling weight to a treating source's opinion, so long as

_____

Feb. 14, 2022) (examining physician), ECF No. 12; Pl.'s Br., *Gonzalez v. Kijakazi*, Case No. 3:21-cv-00012 (M.D. Pa. filed Aug. 9, 2021) (treating physician), ECF No. 15; Pl.'s Br., *Broaddus v. Kijakazi*, Case No. 3:20-cv-01418 (M.D. Pa. filed July 13, 2021) (treating physician), ECF No. 21; Pl.'s Br., *Torres v. Kijakazi*, Case No. 3:20-cv-02049 (M.D. Pa. filed July 1, 2021) (treating physician), ECF No. 15. Indeed, even under the old regulations, a physician assistant's opinion would never be entitled to controlling weight, as a physician assistant was not considered an "acceptable medical source." *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) (explaining requirements for a treating source's medical opinion to be assigned "controlling weight"); *id.* §§ 404.1527(a)(1), 416.1527(a)(1) (limiting "medical opinions" to "statements from acceptable medical sources"); *id.* §§ 404.1502(a), 416.902(a) (defining "acceptable medical source" to include licensed physician assistants only with respect to claims filed under the *new* regulations). In any event, we encourage counsel to revisit and revise his legal boilerplate on this issue before filing any future briefs.

- 18 -

it was 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and not 'inconsistent with the other substantial evidence' in the record." *Michelle K. v. Comm'r of Soc. Sec.*, 527 F. Supp. 3d 476, 481 (W.D. Pa. 2021). However, the regulations governing the evaluation of medical evidence were amended and the treating physician rule was eliminated effective March 27, 2017. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5,844 (Jan. 18, 2017); *see also Densberger*, 202 WL 1172982, at *7–*8; *Michelle K.*, 527 F. Supp. 3d at 481. "The range of opinions that ALJs were enjoined to consider were broadened substantially and the approach to evaluating opinions was changed from a hierarchical form of review to a more holistic analysis." *Densberger*, 2021 WL 1172982, at *7.

Under these new regulations, the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. §§ 404.1520(a), 416.920c(a), "Rather than assigning weight to medical opinions, [an ALJ] will articulate 'how persuasive' he or she finds the medical opinions." *Knittle*, 2021 WL 5918706, at *4; *see also* 20 C.F.R. §§ 404.1520,

416.920c(b). If a medical source provides one or more medical opinions, the agency will consider those medical opinions from that medical source together using the following factors: "(1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treatment relationship, the frequency of examinations, purpose and extent of the treatment relationship, and the examining relationship; (4) specialization; and (5) any other factors that 'tend to support or contradict a medical opinion or prior administrative medical finding.'" *Michelle K.*, 527 F. Supp. 3d at 481; *see also* 20 C.F.R. §§ 404.1520c(a), 416.920c(a); *Densberger*, 2021 WL 1172982, at *8. Under the new regulations, "[t]he two 'most important factors for determining the persuasiveness of medical opinions are consistency and supportability,' which are the 'same factors' that formed the foundation of the treating source rule." *Densberger*, 2021 WL 1172982, at *8; *see also* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2); *Michelle K.*, 527 F. Supp. 3d at 481; *compare* 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1) (supportability), and *id.* §§ 404.1520c(c)(2), 416.920c(c)(2) (consistency), *with id.* §§ 404.1527(c)(3), 416.927(c)(3) (supportability), and *id.* §§

404.1527(c)(4), 416.927(c)(4) (consistency).[9] An ALJ is specifically required to address these two factors in his or her decision. *See* 20 C.F.R. §§ 404.1520(c)(b)(2), 416.920c(b)(2); *see also Densberger*, 2021 1172982, at *8; *Michelle K.*, 527 F. Supp. 3d at 482. "The ALJ may—but is not required to—explain how he considered the remaining factors." *Michelle K.*, 527 F. Supp. 3d at 482; *see also* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2); *Densberger*, 2021 WL 1172982, at *8. "However, when the ALJ has found two or more medical opinions to be equally well supported and consistent with the record, but not exactly the same, the ALJ must articulate how he or she considered [the remaining] factors . . . ." *Densberger*, 2021 WL 1172982, at *8; *see also* 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3); *Michelle K.*, 527 F. Supp. 3d at 482.

---

[9] With respect to supportability, the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). With respect to consistency, the new regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* §§ 404.1520c(c)(2), 416.920c(c)(2).

### 1. Prior Administrative Findings in this Case

The ALJ considered the prior administrative findings in this case, finding them to be "persuasive." The ALJ found the findings and opinions by a state agency medical consultant contained therein to be supported by and consistent with the medical evidence and other evidence of record. (Tr. 31–32.)

The prior administrative findings in this case included the opinions of a state medical consultant, John Simmons, M.D., recorded on October 16, 2017, who had found the claimant capable of performing a full range of light work. Based on his review of Martinez's medical records, including the treating source opinion upon which the plaintiff's appeal is based, Dr. Simmons found that Martinez was capable of lifting and carrying up to 20 pounds occasionally and up to 10 pounds frequently. Dr. Simmons found that Martinez was capable of standing or walking for a total of six hours in an eight-hour workday or sitting for a total of six hours in an eight-hour workday. Dr. Simmons found that Martinez had no non-exertional limitations. (Tr. 454–57, 464–67.)

In evaluating Dr. Simmons's opinions, the ALJ found that

> Regarding supportability, this consultant cited to the
> claimant's medical history, including her two strokes

and her brain injury in June 2017. He cited to medical findings including good muscle strength, and a very stable walking gait. His opinions are consistent with the claimant's treatment records, including treatment records submitted at the time of these opinions, such as records in September and October 2017 that she had a stable walking gait, she was at home taking care of most of her activities of daily living and she reported no difficulty with ambulation, treatment records in December 2017 that she is walking well, treatment records in June 2018 that she is able to get around the community, evidence that she was able to get her drivers license restored, and the clinical signs noted in the records, including in February 2019.

(Tr. 31–32 (citations omitted).)

The plaintiff primarily objects to this evaluation of the state agency medical consultant's findings and opinions based on the fact that Dr. Simmons never examined Martinez in person. But the medical opinion of a non-examining medical source, such as a state agency medical or psychological consultant, may serve as substantial evidence when the opinion is consistent with other medical evidence in the record. *See Nichols v. Comm'r of Soc. Sec.*, 404 Fed. App'x 701, 704–05 (3d Cir. 2010); *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *My-Lein L. v. Comm'r of Soc. Sec.*, 551 F. Supp. 3d 100, 107 (W.D.N.Y. 2021); *Ortiz v. Comm'r of Soc. Sec.*, 309 F. Supp. 3d 189, 205 (S.D.N.Y. 2018).

The plaintiff also suggests that the ALJ's evaluation of the opinions

of this non-examining medical source was lacking because it failed to more robustly cite specific medical evidence that he found supportive of the consultant's findings. But "[t]here is no requirement that the ALJ discuss in its opinion every tidbit of evidence included in the record." *Hur v. Barnhart*, 94 Fed. App'x 130, 133 (3d Cir. 2004); *see also Phillips v. Barnhart*, 91 Fed. App'x 775, 780 n.7 (3d Cir. 2004) ("A written evaluation of every piece of evidence is not required, as long as the ALJ articulates at some minimum level her analysis of a particular line of evidence. Moreover, the ALJ's mere failure to cite specific evidence does not establish that the ALJ failed to consider it.") (citation omitted); *Kupiec v. Kijakazi*, No. 20-1240, 2021 WL 5015775, at *2 (W.D. Pa. Oct. 28, 2021) ("An ALJ is not required to discuss or cite every piece of evidence in the record."). It is only necessary that "the ALJ's decision, read as a whole, illustrates that the ALJ considered the appropriate factors" in reaching his conclusions, which it does here. *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004).

Accordingly, we find the ALJ's evaluation of the prior administrative findings in this case, including the findings and medical opinions of the state agency non-examining medical consultant, Dr.

Simmons, is supported by substantial evidence and was reached based upon a correct application of the relevant law.

### 2. Prior Administrative Findings in a Previous Case

The ALJ also considered the prior administrative findings in previous administrative proceedings on an earlier application for disability benefits, finding them to be "not persuasive." The ALJ found the findings and opinions by a state agency medical consultant contained therein to be inconsistent with the evidence of record. (Tr. 32.)

The prior administrative findings in the claimant's previous disability proceedings included the opinions of a state medical consultant, Robert J. Balogh, Jr., M.D., recorded on November 20, 2015, about six months after Martinez's first stroke. Based on his review of Martinez's medical records at that time, Dr. Balogh had found her capable of performing only sedentary work with postural limitations. (Tr. 445–48.) In evaluating Dr. Balogh's opinions, the ALJ found that:

> The opinions [of Dr. Balogh] are not persuasive. They are from late 2015 and close to 18 months before the claimant's current alleged onset date. The claimant worked in 2016 and part of 2017 performing work that the vocational expert described as medium exertionally and thus, the opinions [of Dr. Balogh] are inconsistent with the claimant's functional abilities until her second stroke at her alleged onset date.

(Tr. 32.)

The plaintiff has not challenged the ALJ's evaluation of this prior administrative finding in previous administrative proceedings on an earlier application for disability benefits.

### 3. Treating Physician Assistant Opinion

On July 18, 2017, the plaintiff's treating provider, Diane Consoli, PA-C, completed an "employability assessment form" in connection with an application by Martinez for state cash assistance benefits. On this preprinted form, PA Consoli marked a box indicating that Martinez was "temporarily disabled" for a period of six months, from June 1, 2017, through December 1, 2017, "due to a temporary condition as a result of an injury or an acute condition and the disability *temporarily* precludes any gainful employment." In support, Consoli noted that Martinez had suffered an ischemic stroke.[10] (Tr. 709 (emphasis in original).)

The plaintiff contends that the ALJ failed to address this opinion by PA Consoli, purportedly making no reference whatsoever to it. But the plaintiff is mistaken. The ALJ's decision expressly acknowledged PA

---

[10] The plaintiff's second stroke occurred on May 31, 2017, the date of her alleged onset of disability.

Consoli's opinion, stating:

> In accordance with 20 CFR 404.1520b(c) and
> 416.920b(c), this decision does not analyze evidence
> that is inherently neither valuable nor persuasive,
> including statements whether or not the claimant is
> disabled or unable to work (Exhibit 4F)[.]

(Tr. 32.) The "Exhibit 4F" referenced by the ALJ here is this very same

employability assessment form completed by PA Consoli.

The ALJ correctly determined that the physician assistant's

statement that Martinez was temporarily disabled due to a temporary

condition that precludes gainful employment was "inherently neither

valuable nor persuasive" under the applicable regulations which

expressly and exclusively reserve to the Commissioner (or the ALJ as her

designee) the ultimate issue of whether the claimant is disabled. *See* 20

C.F.R. §§ 404.1520b(c)(3), 416.920b(c)(3); *see also Knittle*, 2021 WL

5918706, at *6. Moreover, as a statement on an issue reserved to the

Commissioner, the ALJ was under no obligation to discuss this statement

by PA Consoli at all under the new regulations. *See* 20 C.F.R.

§§ 404.1520b(c), 416.920b(c) ("Because the evidence listed in

paragraph[] . . . (c)(3) of this section is inherently neither valuable nor

persuasive to the issue of whether you are disabled . . . , we will not

provide any analysis about how we considered such evidence in our determination or decision . . . .").

Accordingly, we find the ALJ's evaluation of the opinion of treating medical source PA Consoli is supported by substantial evidence and was reached based upon a correct application of the relevant law.

## III.   CONCLUSION

Based on the foregoing, we conclude that the Commissioner's finding that Martinez was not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. Accordingly, the Commissioner's decision denying disability benefits is **AFFIRMED**.

An appropriate Order follows.


Dated: April 8, 2022                          ___*s/Joseph F. Saporito, Jr.*___
                                              JOSEPH F. SAPORITO, JR.
                                              United States Magistrate Judge